IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 3:26-cv-46-ECM |
| | ) | [WO] |
| NEW LIFE CENTER FOR CHANGE, | ) | |
| INC. d/b/a TEEN UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff, the United States of America, and Defendants, New Life Center for Change, Inc. d/b/a Teen University and Alfonza Smith, jointly move for entry of a consent judgment. (Doc. 15). Upon consideration, and for good cause, the Court finds the motion is due to be granted.

**I. BACKGROUND**

The Government alleges as follows: Teen University operates a residential group home for adolescent males. (Doc. 1 at 2, para. 2). It contracted with the Alabama Department of Human Resources "to provide room, board, and services to children with moderate emotional and/or behavioral management problems." (*Id.* at 2, para. 4). As part of that arrangement, Teen University agreed to provide two hours of individual Basic Living Skills, or "BLS," sessions for each resident every day, as well as an additional hour of daily group BLS sessions. (*Id.* at 1–3, paras. 1, 5). While Teen University certified that it had provided these sessions (and accordingly billed Medicaid for the sessions as services

rendered), it "did not provide the majority of the BLS services it certified." (*Id.* at 3, paras. 5–6). Worse still, Teen University then manufactured "false BLS notes" to support its fraudulent Medicaid claims. (*Id.* at 3, para. 7). Though Smith, Teen University's chief executive officer, "became aware that Medicaid had overpaid Teen University," he did not conduct an internal investigation, nor did he direct Teen University to repay Medicaid. (*Id.* at 4, 17, paras. 10, 63).

The Government initiated this action on January 21, 2026, alleging violations of the False Claims Act (Counts One, Two, and Three), unjust enrichment (Count Four), and Payment by Mistake (Count Five). (*Id.* at 17–21, paras. 65–88). The parties filed a joint motion for a consent decree the following day. (Doc. 6). The Court denied that motion without prejudice because it did "not cite any authority or include any analysis articulating why the entry of the proposed consent judgment is proper." (Doc. 7 at 1). The parties subsequently filed a renewed motion for a consent decree, (doc. 8), which was denied without prejudice because the Court found its terms unworkable, (doc. 13).

The parties' third motion for a consent decree is now before the Court. (Doc. 15). That motion contains a proposed consent decree providing for entry of judgment in favor of the Government against Defendants in the amount of $300,000. (*Id.* at 6). Defendants would be jointly and severally liable for that debt, which will be included in the "Treasury Offset Program ('TOP') so that any federal monies owed to Defendants will be credited to the outstanding debt." (*Id.* at 7). The consent decree also proposes a schedule of six $50,000 payments, under which Defendants' debt would be discharged by December 30, 2030. (*Id.*).

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over the False Claims Act claims under 28 U.S.C. §§ 1331 and 1345, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

"District courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy." *Stovall v. City of Cocoa*, 117 F.3d 1238, 1240 (11th Cir. 1997).  While a consent decree "is predicated on consent of the parties, the judge must not give it perfunctory approval." *Id.* at 1242 (quotation omitted).  "Instead, a court must find 'that the proposal represents a reasonable factual and legal determination based on the facts of record, whether established by evidence, affidavit, or stipulation.'" *United States v. City of Tampa*, 739 F. Supp. 3d 1055, 1063 (M.D. Fla. 2024) (quoting *Stovall*, 117 F.3d at 1242).[1]  To determine whether a consent decree is unreasonable, a court must "ascertain whether it represent[s] a reasonable factual and legal determination based on the record." *Howard v. McLucas*, 871 F.2d 1000, 1008 (11th Cir. 1989).

## IV.  DISCUSSION

After a thorough review of the record in this case, the Court finds the proposed consent decree is fair and reasonable.  "Fairness incorporates both procedural and

---

[1] Here and elsewhere the Court cites nonprecedential authority.  While the Court recognizes that these cases are not binding, the Court finds them persuasive.

substantive components." *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994). Normally, a fair agreement "is the product of good-faith negotiations, reflects the opinions of experienced counsel, and takes into account the possible risks involved in litigation if the settlement is not approved." *United States v. Georgia-Pacific Corp.*, 960 F. Supp. 298, 299 (N.D. Ga. 1996). Here, the complaint is well-pleaded and includes examples of false claims that were presented to, and paid for by, Medicaid. (Doc. 1 at 14–16, paras. 60–61). The parties represent that the proposed $300,000 judgment fairly compensates the Government for the harm Defendants caused, recognizes Defendants' cooperation with the Government, and is "based on the certified financial information provided by" Defendants. (Doc. 15 at 2). And the proposed schedule of repayments would ensure that the Government is repaid within five years. (*Id.* at 7). Indeed, the parties stipulated that "the Consent Judgment is a product of good-faith negotiations, reflecting the [p]arties' careful and informed assessment of the relative merits of each other's claims while considering the costs and risks associated with litigating the case." (*Id.* at 2). For these reasons, the Court determines that the proposed consent decree is fair and reasonable.

The consent decree is also lawful. The Government clearly has authority to litigate alleged False Claims Act violations. *See* 31 U.S.C. § 3730(a) ("If the Attorney General finds that a person has violated or is violating section 3729, the Attorney General may bring a civil action under this section against the person."). And the relief sought—compensatory damages—is plainly authorized for such violations. *See* 31 U.S.C. § 3729(a). Thus, the Court finds the terms of the proposed consent decree lawful, too.

4

Finally, the proposed consent decree aligns with public policy.  The purpose of the False Claims Act is to deter and punish fraud against the Government. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 423 (2023) ("The FCA dates to the Civil War, when a Congressional committee uncovered stupendous abuses in the sale of provisions and munitions to the War Department. . . .  To put a stop to the plunder—and more generally, to protect the funds and property of the Government—Congress enacted the FCA." (quotations omitted)).  The proposed consent decree furthers that purpose—it permits the Government to recover funds paid out on claims that were fraudulently submitted.

Because the proposed consent decree is fair, reasonable, lawful, and not adverse to public policy, the parties' joint motion is due to be granted.

## V.  CONCLUSION

For the reasons stated, and for good cause, it is

ORDERED that the parties' joint motion for entry of a consent judgment (doc. 15) is GRANTED.  The terms set forth by the parties in their proposed consent order (doc. 15 at 4–9) are ADOPTED herein.[2]

A final judgment will be entered in accordance with the Court's Order.

---

[2] Under the terms of the proposed consent decree, Defendants agreed to make their first payment on or before June 1, 2026. (Doc. 15 at 7).  If necessary, the parties are permitted to choose an alternate date on which Defendants shall make their first payment without further Court intervention.  However, that alternate date must be prior to December 30, 2026, and all other payment dates agreed to by the parties in the proposed consent decree remain in force.

DONE this 18th day of June, 2026.

                             /s/ Emily C. Marks
                      EMILY C. MARKS
                      UNITED STATES DISTRICT JUDGE